**SMOCK MATERIALS HANDLING COMPANY, INC., Appellant–Defendant,**

**v.**

**Charles A. KERR, Appellee–Plaintiff.**

**No. 53A01–9810–CV–375.**

Court of Appeals of Indiana.

Nov. 10, 1999.

William H. Kelley, Kyle M. Baker, Kelley, Belcher & Brown, Bloomington, Indiana, Attorneys for Appellant.

Joseph E. Allman, Macey, Macey and Swanson, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

Appellant–Defendant Smock Materials Handling Co., Inc. ("Smock") appeals the judgment entered on a jury verdict in the amount of $775,000.00 in favor of Appellee–Plaintiff Charles A. Kerr ("Kerr") in his products liability/negligence action brought after a scissors lift manufactured by Smock collapsed on Kerr's head. We affirm.

### Issues

Smock raises six issues which we consolidate and restate into four as follows:

I. Whether the trial court abused its discretion by denying Smock's motions for judgment on the evidence based upon its assertions that:

    a. Kerr failed to prove that Smock's lift was unreasonably dangerous;

    b. Kerr failed to prove that Smock's product was defective; and

    c. Kerr incurred the risk as a matter of law.

II. Whether the trial court abused its discretion in the instruction of the jury by refusing Smock's tendered instruc-

tion on the "Learned Intermediary" defense.

III. Whether the trial court abused its discretion in the instruction of the jury by refusing Smock's tendered instruction regarding the modification · and/or alteration of product defense.

IV. Whether the trial court abused its discretion when instructing the jury by using the term "strict liability" in three of its jury instructions.

### Facts

The evidence in the light most favorable to the verdict reveals that Smock manufactured and sold to Kerr's employer, General Electric, a 2,500 pound capacity scissor lift with double-acting hydraulic lift cylinders. (R. 46). The lift cylinders/rods operate to raise or lower the lift platform. (R. 372–77). The lift rods push up against attachment cups to raise the lift; however, in the Smock machine, the lift rods are not attached to the cups, but instead depend on the weight of the platform to keep them in place. (R. 233–34, 385). There is a flexible skirt or curtain that hangs down around all four sides of the lift to keep debris out from under the lift. (R. 386). When troubleshooting problems occur under the deck, the prescribed procedure is to place two "safety chocks" in the base frame channel behind the roller on each scissor arm. (R. 134–36). It is physically impossible for an individual to insert both safety chocks in place at the same time; one must place a chock under the platform, then walk around to the other side to put the other chock in place. (R. 218–19, 497).

Kerr had worked for General Electric for twenty-five years. (R. 122). His job was to keep the assembly line running by troubleshooting problems with the plant equipment. (R. 126). Kerr had considerable training and experience in the operation and maintenance of the Smock machines and in the safety procedures prescribed for using and troubleshooting the machines. (R. 130–34).

On October 9, 1995, the Smock lift system in question was installed in the General Electric plant. (R. 46). The new machine intermittently stopped raising or lowering on several occasions. (R. 138–40). Kerr would inspect the machine but it would always begin working again. (R. 139–40).

On November 17, 1995, the Smock machine again would not go up or down. (R. 143). Kerr went to one side of the lift, raised the skirt up and placed one of the safety chocks behind the scissor arm. (R. 144–46). While Kerr's head was still under the machine from installing the first safety chock, the 2000 pound platform fell down on his head, trapping him under the lift. (R. 146, 496). Kerr suffered serious personal injuries as the result of the accident. (R. 46–48). Before the accident, the new machine had operated on only one shift since being installed in the plant. (R. 141–42). The lift had fallen on Kerr's head because the lift rods had come out of the attachment cups. (R. 385, 510–11).

Smock began manufacturing its own scissor lifts in 1994. (R. 314). At first, Smock copied lifts made by other manufacturers and had attached the lift rods to the attachment cups with pins. (R. 327–28). In 1995, attaching lift rods to the cups with pins or by another method was the industry standard. (R. 315–16, 413–15, 521). In 1995, Smock quit installing the pins that attached the lift rods to the attachment cups because some of the pins had been shearing off. (R. 328, 493–96). The Smock lift that fell on Kerr was one of the first ten lifts Smock had manufactured without pins attaching the lift rods to the cups. (R. 315). No General Electric employee was aware of this design change that permitted the lift rods to come out of the attachment cups. (R. 348). Smock had provided no warning regarding the risk that the rods could come out of the lift rods and permit the platform to fall. (Supp. R. 24–68).

The case was tried to a jury. (R. 7–9). The jury returned a verdict in favor of

Kerr in the amount of $775,000.00. (R. 9). This appeal followed.

### Discussion and Decision

*I.   Motions for Judgment on Evidence*

*A.   Standard of Review*

■ The purpose of a motion for judgment on the evidence is to test the sufficiency of the evidence. *Zemco Manufacturing, Inc. v. Pecoraro,* 703 N.E.2d 1064, 1071 (Ind.Ct.App.1998), *trans. denied.* The granting or denial of a motion for judgment on the evidence is within the broad discretion of the trial court and will be reversed only for an abuse of that discretion. *Id.* Indiana Trial Rule 50 reads, in pertinent part, as follows:

(A) **Judgment on the Evidence—How Raised—Effect.** Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict.

As stated in *Liberty Mutual Ins. Co. v. Blakesley,* 568 N.E.2d 1052 (Ind.Ct.App. 1991):

On appeal, we use the same standard of review as the trial court in determining the propriety of a judgment on the evidence. When the trial court considers a motion for judgment on the evidence, it must view the evidence in a light most favorable to the non-moving party. Judgment may be entered only if there is no substantial evidence or reasonable inferences to be drawn therefrom to support an essential element of the claim.

*Id.* at 1057. When reviewing a trial court's ruling on a motion for judgment on the evidence, we examine the evidence and the reasonable inferences most favorable to the plaintiff from a quantitative as well as a qualitative perspective. *Montgomery Ward & Co. v. Gregg,* 554 N.E.2d 1145, 1150 (Ind.Ct.App.1990). Quantitatively, evidence may fail only where there is none at all. *Carbo, Inc. v. Lowe,* 521 N.E.2d 977, 980, (Ind.Ct.App.1988). Qualitatively, however, it fails when it cannot reasonably be said that the intended inference may logically be drawn therefrom. *Id.* The failure of an inference may occur as a matter of law when the intended inference can rest on no more than speculation or conjecture. *Id.* A judgment on the evidence is proper only when there is a total absence of evidence in favor of the plaintiff, that is, that the evidence is without conflict and is susceptible of only one inference and that inference is in favor of the defendant. *Montgomery Ward,* 554 N.E.2d at 1150. Or, the inference intended to be proven by the evidence cannot logically be drawn from the proffered evidence without undue speculation. *Id.*

*B.   Defective and Unreasonably Dangerous*

■ Under the Indiana Product Liability Act, IND.CODE § 33–1–1.5–1 through – 5,[1] the plaintiff must prove that the product was in a defective condition which rendered it unreasonably dangerous. *Welch v. Scripto–Tokai Corporation,* 651 N.E.2d 810, 814 (Ind.Ct.App.1995). "The requirement that the product be in a defective condition focuses on the product itself while the requirement that the product be unreasonably dangerous focuses on the reasonable expectations of the consumer." *Id.* " '[U]nreasonably dangerous' " has been defined as " 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer … with the ordinary knowledge common to the community as to its characteristics.' " *FMC Corporation v. Brown,* 526 N.E.2d 719, 728

---

1.   In 1998, the Indiana Product Liability Act was repealed and recodified at IND.CODE § 34–20–1 through –9. P.L.1–1998 § 221. Additionally, the definitions of several terms used in the Act are now found in IND.CODE § 34–6. *Id.*

(Ind.Ct.App.1988) (citing *Bemis Co., Inc. v. Rubush,* 427 N.E.2d 1058, 1061 (Ind.1981)), *opinion adopted,* 551 N.E.2d 444 (Ind. 1990).

### C. Defense of Incurred Risk

Incurred risk can operate as a defense to both strict liability[2] and negligence[3] claims. *Schooley v. Ingersoll Rand, Inc.,* 631 N.E.2d 932, 940 (Ind.Ct. App.1994). Incurred risk involves a mental state of venturousness on the part of the actor and demands a subjective analysis into the actor's actual knowledge and voluntary acceptance of the risk. *Id.* Incurred risk will bar a strict liability (product liability) claim where the evidence is without conflict and the sole inference to be drawn is that the plaintiff had actual knowledge of the specific risk and understood and appreciated that risk. *Id.* Incurred risk will eliminate a plaintiff's recovery in an action based on fault (negligence) if the plaintiff's contributory fault is greater than 50%. *Heck v. Robey,* 659 N.E.2d 498, 505 n. 9, n. 10 (Ind. 1995); IND.CODE § 34–51–2–6.

### D. Analysis

Based on the record developed in the present case, an inference may be reasonably drawn that Smock's failure to install pins between the lift rods and the attachment cups which enabled the rods to come out of the cups and permitted the platform to fall unexpectedly rendered the scissors lift defective and unreasonably dangerous. Moreover, the inference may reasonably be drawn that Kerr had not incurred the risk of the falling platform as he had no specific knowledge that the lift rods could come out of the attachment cups and permit the platform to fall; and,

that Kerr had attempted to put the safety chocks in place before troubleshooting the lift. Therefore, we cannot conclude that the trial court abused its discretion by denying Smock's motions for judgment on the evidence.

### II., III., & IV. Instruction of the Jury

### Standard of Review—Jury Instructions

As stated in *Town of Highland v. Zerkel,* 659 N.E.2d 1113, 1122 (Ind.Ct. App.1995):

The well-settled standard by which we review the challenge to jury instructions affords great deference to the trial court. The manner of instructing the jury lies within the sound discretion of the trial court, whose ruling will not be reversed unless an instruction error is such that, taken as a whole, the charge to the jury misstates the law or otherwise misleads the jury. Additionally, the instruction given to the jury must be a correct statement of the law, be applicable to the evidence adduced at trial and be relevant to the issues the jury must decide in reaching its verdict.

(citations omitted). In determining whether the trial court erroneously refused a tendered instruction, we consider (1) whether the tendered instruction correctly states the law, (2) whether there is evidence in the record to support giving the instruction, and (3) whether the substance of the instruction is covered by other instructions. *Stamper v. Hyundai Motor Co.,* 699 N.E.2d 678, 687–88 (Ind.Ct.App. 1998), *trans. denied.* Where the verdict would not have differed had the jury been properly instructed, any error in the giving of instructions is harmless. *Canfield v. Sandock,* 563 N.E.2d 1279, 1282–83 (Ind.

---

**2.** As codified under the Indiana Product Liability Act, it is a defense to a product liability claim that:

the user or consumer bringing the action knew of the defect and was aware of the danger and nevertheless proceeded unreasonably to make use of the product and was injured by it.

IND.CODE § 33–1–1.5–4(b)(1).

**3.** The Indiana Comparative Fault Act does not apply to strict liability actions. *Irvine v. Rare Feline Breeding Center,* 685 N.E.2d 120, 124 (Ind.Ct.App.1997), *trans. denied;* IND.CODE § 34–51–2–1 (comparative fault statute governs "any action based on fault").

1990). Instructional errors which do not prejudice substantial rights do not inevitably require reversal. *Lutheran Hospital of Indiana, Inc. v. Blaser,* 634 N.E.2d 864, 871 (Ind.Ct.App.1994).

### II. Refusal of Tendered Instruction on "Learned Intermediary"

#### A. Smock's Tendered Instruction

The trial court refused to give the jury the following instruction tendered by Smock:

> A manufacturer has no duty to warn an ultimate user of a product's potential danger when the manufacturer sells a product to a learned intermediary.

(R. 35).[4]

#### B. Analysis—"Sophisticated User" Defense

■■■■■ As stated in *Natural Gas Odorizing, Inc. v. Downs,* 685 N.E.2d 155, 163 (Ind.Ct.App.1997), *trans. denied:*

> The duty to warn stems from the view that a product manufacturer should have superior knowledge of its product. However, under the 'sophisticated user' exception, there is no duty to warn when the dangers posed by the product are already known to the user.... Reliance is only reasonable if the intermediary [or user] knows or should know of the product's dangers. Actual or constructive knowledge may arise where either the supplier has provided an adequate explicit warning of such dangers or information of the product's dangers is available in the public domain.
>
> Whether a manufacturer has discharged its duty under the sophisticated intermediary [or user] doctrine is almost

always a question for the trier of fact. The manufacturer's reliance on the intermediary's [or user's] alleged sophistication may be more or less reasonable given the product's nature, complexity and associated dangers, the likelihood that the intermediary [or user] will communicate warnings to the ultimate consumer, the dangers posed to the ultimate consumer by an inadequate or nonexistent warning, and the feasibility of requiring the manufacturer to directly warn the product's ultimate consumers.

(citations omitted).

#### C. Analysis

■■■ At the outset, we note that, considering that Smock's lift was designed such that the rods were never to come out of the cups, the fact that the rods could and did come out of the cups during the normal operation of the lift strongly, if not conclusively, supports the conclusion that the danger of the deck falling under these circumstances was the result of a *latent* design or manufacturing defect, the warning of which could not be delegated as a matter of law. *See Hoffman v. E.W. Bliss Co.,* 448 N.E.2d 277, 286 (Ind.1983) (holding that manufacturer could not delegate or otherwise avoid the duty to warn of a latent defect which became dangerous when a product malfunctioned or operated in an unexpected manner).

Additionally, in the present case, it is undisputed that neither G.E. nor its employees had actual knowledge or had foreseen that the platform could and would fall as the result of the lift rods coming out of the attachment cups. (R. 348). Further,

---

4. In Indiana, the "learned intermediary" exception to a defective warning claim has thus far been limited to cases involving prescription drugs and medical devices. *See Natural Gas Odorizing, Inc. v. Downs,* 685 N.E.2d 155, 162–63 n. 10 (Ind.Ct.App.1997), *trans. denied; Ortho Pharmaceutical Corp. v. Chapman,* 180 Ind.App. 33, 388 N.E.2d 541, 549 (1979). However, the "learned intermediary" defense is related to other defenses variously known as the 'sophisticated user' or 'sophisticated intermediary' defenses. *See Natural Gas,* 685 N.E.2d at 162–63 n. 10. Sometimes these terms have been used interchangeably. *Id.* Due to the confusion over the terminology, we will look to the substance of Smock's argument and analyze the instruction as if it had correctly stated the "sophisticated user" defense. *See id.*

the evidence established that Smock's lifts had formerly been manufactured, as per the industry standard, with the lift rods attached to the cups with pins. (R. 315–16, 327–28, 413–15, 521). Thus, under the present circumstances, it cannot be fairly said that the specific danger posed by the rods coming out of the cups in the normal operation of Smock's lift were known or should have been known to G.E., its employees, or that the information was available in the public domain.

The "learned intermediary" instruction was not applicable to the evidence at trial or relevant to the issues the jury was called upon to decide. Therefore, the trial court did not abuse its discretion in refusing to give the instruction.

Moreover, as the evidence did not support the giving of the instruction, the jury's verdict would not have been different had the trial court given the "sophisticated user" instruction. As Smock's substantial rights were not prejudiced by the trial court's refusal to give the instruction, reversal is not warranted. *See Canfield,* 563 N.E.2d at 1282–83; *Lutheran Hospital,* 634 N.E.2d at 871.

### III. Refusal of Tendered Instruction on Alteration or Modification of Product Defense

#### A. Smock's Tendered Instruction

The trial court refused to give the jury the following instruction tendered by Smock:

> It is a defense that a cause of the physical harm is a modification or alteration of the product made by any person after it is delivered to the initial user or consumer if such modification or alteration is the proximate cause of physical harm where such modification or alteration is not reasonably expectable to the seller.

(R. 33). However, the trial court did give the following instruction:

> [T]he Defendant has claimed certain specific defenses. These defenses are

that the Plaintiff himself was negligent; that the Plaintiff incurred the risk and/or assumed the risk; and that the product was misused or altered.....

(R. 62–63).

#### B. Smock's Contention

Smock asserts that there was evidence that a sensor on the lift had been adjusted to a lower position than where Smock had set it which had made it difficult to put the safety chocks in place. (R. 508–09). Thus, Smock asserts the trial court erred by refusing his tendered instruction on the modification or alteration of product defense.

#### C. Alteration or Modification of Product Defense

The modification or alteration defense is only applicable in a products liability case if such modification or alteration is the proximate cause of physical harm where such modification or alteration is not reasonably expectable to the seller. IND.CODE § 34–20–6–5. The modification or alteration of the product must be independent of the expected and intended use to which the product is put. *Montgomery Ward,* 554 N.E.2d at 1157.

#### D. Analysis

The Smock machine manual specifically provided that the sensor in question could be adjusted if necessary. (Supp. R. 30). Thus, Smock cannot seriously contend that it could not have reasonably expected the "modification or alteration." Therefore, Smock's tendered "modification or alteration" instruction was not applicable to the evidence at trial or relevant to the issues the jury was called upon to decide. Therefore, we cannot conclude that the trial court abused its discretion or committed reversible error by refusing the instruction.

## IV. Use of Term "Strict Liability" in Three Jury Instructions

### A. Instructions which used the Term "Strict Liability"

Smock objected to the term "strict liability" as used in the following instructions given to the jury:

This is a lawsuit brought by the Plaintiff, Charles A. Kerr, against the Defendant, Smock Materials Handling Company, Inc. Plaintiff claims that as part of his employment he was troubleshooting a problem with a material handling system that contained a 2,500 pound capacity scissor lift manufactured by Defendant. Plaintiff claims he was severely injured when the scissor lift unexpectedly fell on his head.

Plaintiff claims that the scissor lift was defective and unreasonably dangerous in its design in violation of the Indiana Products Liability statutes. Plaintiff further claims that the Defendant failed to warn and failed to provide adequate instructions regarding the possible danger, also in violation of the Indiana Products Liability laws.

Plaintiff claims that the Defendant was negligent in Defendant's design of the scissor lift and in Defendant's failure to warn and provide adequate instructions regarding the scissor lift. Plaintiff also claims that the Defendant is strictly liable to Plaintiff for Plaintiff's injuries and losses caused by Defendant's defective and unreasonably dangerous machine.

Plaintiff has the burden to prove these claims by a preponderance of the evidence. Plaintiff also must prove by a preponderance of the evidence that Defendant's acts or omissions complained of were the proximate cause of Plaintiff's injuries.

The Defendant denies that it was negligent or is strictly liable to the Plaintiff as claimed by the Plaintiff. The Defendant also denies that it was the proximate cause of the Plaintiff's injuries.

The Defendant has no burden to disprove the claims by Plaintiff, as I have already stated, it is the Plaintiff who has the burden to prove Plaintiff's claims.

However, the Defendant has claimed certain specific defenses. These defenses are that the plaintiff himself was negligent; that the Plaintiff incurred the risk and/or assumed the risk; and that the product was misused or altered. The Defendant has the burden of proving these defenses by a preponderance of the evidence.

. . . .

You must decide this case on the basis of the Indiana law of comparative fault. The term "fault" refers to a varieties [sic] of conduct that make a person responsible, in some degree, for an injury. The types of fault at issue in this case are:

Strict products liability

Negligence

Contributory negligence

Incurred risk

. . . .

Plaintiff Charles A. Kerr brings a strict liability claim under the Indiana Products Liability statute. In order to prevail on this theory, the Plaintiff has the burden of proving the following propositions by a preponderance of the evidence.

(1) That at the time the Smock scissor lift was designed, manufactured and sold by defendant, it was defective and unreasonably dangerous to users or consumers, when used in reasonably expectable ways;

(2) That the plaintiff was injured; and

(3) That the defendant Smock Company's defective and unreasonably dangerous scissor lift was a proximate cause of the injuries to plaintiff.

If you find from consideration of all the evidence that each of these elements has been proven by a preponderance of all the evidence, then you should find for

the plaintiff on his claim of strict product liability.

If you find from consideration of all the evidence that any of these elements has not been proven by plaintiff, you should find for the defendant on the plaintiff's claim of strict product liability.

The plaintiff must prove these propositions. The defendant has no burden of disproving them.

(R. 62–63, 67, 72).

### B. Strict Liability under Indiana Law

■ The use of the term "strict liability" is appropriate under Indiana law. *See* IND.CODE § 34–20–2–3 providing that "[a] product liability action based on the doctrine of strict liability in tort may not be commenced [against a seller of a product unless the seller is a manufacturer of the product];" *Marshall v. Clark Equipment Co.*, 680 N.E.2d 1102, 1104 (Ind.Ct.App. 1997) (noting that "[i]n Indiana, actions for strict liability in tort are governed by" the Indiana Product Liability Act), *clarified on rehearing*, 683 N.E.2d 1351, *trans. denied.*

### C. Analysis

As the term "strict liability" is appropriate under Indiana law, there was nothing inappropriate about the employment of the term in the instructions to the jury. Therefore, we cannot conclude that the trial court abused its discretion or committed reversible error in using the term "strict liability" in three of its instructions.

Affirmed.

GARRARD, J., and SULLIVAN, J., concur.