CONTROL TECHNIQUES, INC., a/k/a Warner Control Company and/or Warner Control Techniques, Appellant–Defendant,

v.

John W. JOHNSON and Linda Johnson, Appellees–Plaintiffs.

No. 45A03–9905–CV–198.

Court of Appeals of Indiana.

Oct. 13, 2000.

Cornelius J. Harrington, Johnson & Bell, Highland, Indiana, Attorney for Appellant.

Nick Katich, Lucas, Holcomb & Medrea, Merrillville, Indiana, Attorney for Appellees.

## OPINION

BAILEY, Judge

### Case Summary

Control Techniques, Inc. ("Control"), defendant below, appeals the trial court's judgment in favor of Plaintiff–Appellee John W. Johnson ("Johnson"), entered following a jury trial. We affirm.

### Issues

Control presents four issues for our review, which we restate as:

I. Whether the trial court properly denied Control's motions for judgment on the evidence;

II. Whether the trial court abused its discretion by rejecting Control's proffered jury instruction on intervening causes;

III. Whether the trial court appropriately instructed jurors to disregard certain remarks made by Control's counsel during closing arguments; and

IV. Whether the jury's verdict was excessive.

### Facts and Procedural History

On December 14, 1991, Johnson was injured when he came into contact with electricity while measuring the voltage entering a circuit breaker at the LTV Steel ("LTV") plant in East Chicago, Indiana. Johnson was working for LTV as an electrician at the time of the accident. The circuit breaker was part of a motor control system designed and built by Control and sold by Control to LTV in connection with LTV's renovation of its facility. The circuit breakers arrived at the LTV facility with three uninsulated aluminum bars protruding from the top of each breaker. (R. 1863.) Control installed the bars to provide a point at which electrical power could be connected to the circuit breakers.

LTV hired Meca Engineering Corp. of America ("Meca") to manage the work done by the various contractors hired to upgrade the LTV facility, including Meade Electric ("Meade"), an electrical contractor retained to install the motor control equipment and the circuit breakers. Meade's duties included connecting the circuit breakers to an electrical power supply. Meade's general foreman on the project, Robert Roach ("Roach"), had never seen circuit breakers with an electrical power connection configuration involving protruding exposed aluminum bars in his 18 years as a journeyman electrician. Roach asked Meca's project representative Dan Ziegler ("Ziegler") how Meade should connect electrical power to the breaker. Ziegler told Roach that connection of power to the breakers was Meade's responsibility, and suggested that Meade would have to drill holes in the bars so that wire-securing lugs could be attached to the bars.

Meade removed the aluminum bars, drilled holes for the lugs, and reattached the bars. Meade then ran electrical wires down from above the circuit breakers to the bars, and attached the exposed metal ends of the wires to the bars by crimping the wire between the bars and lugs and tightening the lugs onto the bars with nuts and bolts. The bars were less than one-

half inch apart. The lugs Meade used were wider than the bars themselves, and further reduced the space between the bars. The bars and lugs, which extended from the tops of the breakers, were not insulated. When the power was connected to the circuit breakers, the uninsulated bars and lugs presented an exposed source of electricity, even when the circuit breakers themselves were off.

Shortly before the accident, Johnson was advised about a malfunction with the motor control system. He went to the electrical control room, where he discovered that one of the circuit breakers had tripped, and proceeded to test the voltage on the breaker with a standard two-pronged voltage tester. After Johnson placed the tester's prongs on two lug and bar pieces, electricity arced toward him, seriously burning his arms and face.

Johnson pursued a worker's compensation claim against his employer, LTV, and sued Control, Meade, and Meca,[1] claiming that the accident was the result of their negligence. Johnson eventually settled with Meade, and the case against Meca and Control proceeded to jury trial in the Lake County Superior Court on March 1, 1999. At the conclusion of Johnson's case, Meca and Control moved for judgment on the evidence. The court granted Meca's motion, but declined to dismiss Control. After Control rested, it again moved for judgment on the evidence, but its motion was denied. At the conclusion of trial, the jury returned a verdict in favor of Johnson, and awarded him $2,000,000 in damages. The jury apportioned 5% of the fault to Control, 15% of the fault to Johnson, and 80% of the fault to Meade, which had been designated a non-party pursuant to the Comparative Fault Act. On March 9, 1999, the court entered judgment on the jury's verdict against Control in the

amount of $100,000, representing Control's proportional share of the total verdict.

Control appeals.

## Discussion and Decision

### I. Judgment on the Evidence

#### A. Standard of Review

Trial Rule 50(A) of the Indiana Rules of Trial Procedure provides:

(A) Judgment on the Evidence – How Raised – Effect. Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding the verdict.

The granting of a motion for judgment on the evidence is a matter committed to the sound discretion of the trial court, and will be reversed only if the court has abused its discretion. *Smock Materials Handling Co. v. Kerr*, 719 N.E.2d 396, 401 (Ind.Ct. App.1999). Upon appeal, we employ the same standard as the trial court. *Id.* We consider the evidence in the light most favorable to the non-moving party. Judgment may be entered only if there is no substantial evidence or reasonable inferences to be drawn therefrom to support an essential element of the claim. *Dughaish ex rel. Dughaish v. Cobb*, 729 N.E.2d 159, 167 (Ind.Ct.App.2000), *reh'g denied.*

#### B. Analysis

At trial, Johnson contended that Control negligently equipped the circuit breakers with the aluminum electrical connection bars, which violated various industry standards, and that Control negligently failed to remove the bars before delivering the equipment to LTV. Control argued at

---

1. Johnson sued several other defendants who played no role at trial and are not parties to this appeal. In addition, Johnson's wife, Lin-

da Johnson, sued for loss of consortium damages. She was awarded nothing, and is not a party on appeal.

trial, and continues to argue here, that it had attached the bars for its factory testing of the motor control system, and that it left the bars on only because LTV specifically asked that the bars remain. Control also claims that even if the bars should have been removed, Meade's negligent connection of the breakers to the power supply was an unforeseeable intervening cause of the accident, relieving Control of any liability.

To prevail on its negligence claim against Control, Johnson was required to establish that Control had a duty to conform its conduct to a particular standard of care, that Control failed to conform its conduct to the requisite standard of care, and that Control's breach proximately caused Johnson's accident. *See Town of Highland v. Zerkel,* 659 N.E.2d 1113, 1120 (Ind.Ct.App.1995). Whether Control breached a duty and whether the breach proximately caused injury are generally questions to be determined by the trier of fact. *See Bamberger & Feibleman v. Indianapolis Power & Light Co.,* 665 N.E.2d 933, 938 (Ind.Ct.App.1996). However, whether a duty of care exists is a question of law for the courts to decide. *Town of Highland,* 659 N.E.2d at 1120.

### 1. Duty

Johnson's negligence claims included allegations that Control had a legal duty to design, manufacture, assemble and deliver the motor control system and its component parts, including the circuit breakers, in a reasonably prudent manner so as to avoid foreseeable harm, and in conformity with standards from the National Electric Code ("NEC"), Underwriters Laboratories ("UL"), and the National Fire Protection Association ("NFPA"). Control does not challenge upon appeal the existence of such duties. The issue before us is therefore whether Johnson presented sufficient evidence from which the jury could conclude that Control breached its duties, proximately causing Johnson's accident.

### 2. Breach

Johnson's electrical engineering expert, Professor William DeWitt ("DeWitt"), testified that he had never before seen a circuit breaker with protruding exposed aluminum bars used to facilitate an electrical connection. He considered the bars dangerous and improper and stated that they should not have been used to facilitate a connection between the breakers and a power supply. He also testified that the bars violated accepted electrical safety standards. DeWitt indicated that if the bars were to be used, they should have been rigidly mounted to the circuit breaker pursuant to NEC standards. According to DeWitt, the bars were not rigidly mounted. DeWitt further stated that the aluminum bars should have been mounted at least one inch apart from each other pursuant to accepted UL specifications. The bars were less than one-half inch apart. Moreover, DeWitt testified that the bars violated the NFPA because they were impermissible devices located upstream of the circuit breaker, and were live even when the circuit breaker was off. Finally, DeWitt stated that if the bars had been installed to facilitate Control's initial test of the system, as Control maintained, the bars may have constituted acceptable "temporary wiring" within the meaning of the NEC, but should have been removed from the circuit breakers prior to delivery to LTV pursuant to NEC guidelines.

Control's defense is, as it was at trial, that LTV specifically requested that the bars be left on the circuit breakers following the factory test of the motor control system, to provide Meade with flexibility in connecting the breakers to a power supply. Control's representative at trial, Derald Bogs ("Bogs"), who worked for LTV at the time of the accident and supervised LTV's facility upgrade, testified that he specifically told Control not to remove the bars. However, during his deposition taken several years prior to trial, Bogs was unable say why the breakers had been shipped to LTV with the bars attached.

Further, on December 17, 1991, four days after the accident, Boggs prepared a written report stating that after he examined the circuit breakers, he discovered that they "were supplied with bus termination pieces instead of the common mechanical connection." Moreover, on January 20, 1992, Bogs wrote to Control on behalf of LTV demanding that Control provide some justification under the NEC for spacing the bars less than one-half inch apart. Bogs confirmed that the bars had been installed by Control, stating, "the pictures that Control Techniques has made prior to shipment clearly illustrate the bus pieces being present."

■ The jury was not required to believe that Bogs, on behalf of LTV, told Control to ship the breakers with the bars attached, particularly in light of the evidence above. In any event, DeWitt testified that the presence of the bars so violated accepted standards and practices that delivery of the breakers with the bars attached was negligent regardless of whether they had been requested by Control. The jury was presented with sufficient evidence to find that Control breached its duties to design, manufacture, assemble and deliver the circuit breakers in a reasonably prudent manner so as to avoid foreseeable harm, and in conformity with various accepted standards of care.

### 3. Proximate Cause

■ An act of negligence is the proximate cause of an occurrence when the occurrence should have been foreseen and anticipated as the natural and probable consequence of the negligent act. *Lutheran Hospital of Indiana, Inc. v. Blaser*, 634 N.E.2d 864, 871 (Ind.Ct.App.1994). In this case, there was evidence from which the jury could have concluded that Johnson's accident was the foreseeable result of Control's negligence. According to DeWitt, the risk presented by Control's negligent installation of the aluminum bars was that an explosive short circuit could occur if an object passed between two of the bar and lug pieces. The parties generally agree that Johnson's accident probably occurred when one of the wire probes of Johnson's voltage tester slipped from where Johnson had placed it on the bar and lug piece, and passed between two of the bars and lugs, causing a short circuit that created the explosive arc of electricity. DeWitt testified that the live bars and lugs were an obvious and convenient place to test for the presence of incoming voltage. Johnson testified that he performed the test with a standard voltage tester in an acceptable manner. It was therefore reasonably foreseeable that if the bars were left on the breakers and connected to an electrical power supply, someone would use the bars to test for incoming voltage, and might inadvertently allow a standard voltage tester prong to pass between two of the bars, leading to an explosive short circuit. Indeed, Johnson's accident appears to be precisely the event risked by Control's installation of the bars.

Control maintains that even if it was negligent to affix the bars to the circuit breakers and to deliver the breakers to LTV with the bars attached, the accident would never have occurred if Meade had wired the bars properly. According to Control, the accident happened because Meade negligently wired the bars by using oversized lugs, which further reduced the space between the bars, and because Meade failed to properly insulate the bars and lugs, leaving an exposed source of electricity. Control reasons that its initial installation of the aluminum bars merely created a condition that rendered possible Meade's subsequent negligent wiring of the breakers, which Control claims was an unforeseeable superceding cause of the accident, severing the causal connection between Control's initial negligence and Johnson's subsequent accident.

■ Control correctly notes that when one defendant's negligence merely creates a condition that makes possible the subsequent negligent act of another, the

first negligently created condition is not necessarily the proximate cause of the ultimate injury-producing event. *See Crull v. Platt,* 471 N.E.2d 1211, 1215 (Ind.Ct.App. 1984). This is simply another way of saying that an independent act intervening between the original act of negligence and the occurrence may break the chain of proximate causation and relieve the original tortfeasor of liability for the occurrence. *See Id.; Hooks SuperX, Inc. v. McLaughlin,* 642 N.E.2d 514, 520 (Ind. 1994). However, the causal connection between the first act of negligence and the ultimate harm is severed only if the original negligent actor could not have foreseen that the second actor would intervene in such a way as to produce the harm. *Collins v. J.A. House, Inc.* 705 N.E.2d 568, 573 (Ind.Ct.App.1999), *reh'g denied, trans. denied.* Moreover, there may be more than one cause of an injury, and a negligent actor may be liable for the results of his actions even though they combine with the actions of others to produce the resulting harm. *National R.R. Passenger Corp. v. Everton by Everton,* 655 N.E.2d 360, 366 (Ind.Ct.App.1995).

▮▮▮▮ The foreseeability of an intervening cause and, thus, whether a defendant's conduct is the proximate cause of a plaintiff's damages, is a question of fact for a jury. *Id.* at 366–67. Liability does not hinge on an actor's ability to foresee the exact manner in which harm will occur; rather, it is enough if he could have foreseen, in a general way, the injurious consequences of his actions. *Id.* at 367.

The evidence adduced at trial indicates that Control could have foreseen that Meade would wire the bars in a way that did not reduce the risk created by the bars themselves. Scott Matthews ("Matthews"), Control's systems engineer on the project, testified that Control always shipped circuit breakers with some kind of device for connecting incoming electrical power to the breakers. In this case, Control delivered circuit breakers with aluminum bars to provide Meade with the flexi-

bility to wire the breakers in the manner Meade felt prudent. According to Matthews, the bars gave Meade the option of connecting electricity to the breakers by drilling and tapping the bars, and connecting wires to the bars by using compression lugs attached to the bars with screws and bolts. This appears to be precisely what Meade did. It appears that Meade did not insulate the bars and lugs, and that Meade used lugs larger than Control felt were appropriate. However, the jury heard testimony that the bars violated various codes and standards, that they should never have been used in the first place, and that experienced electricians had never seen such devices before. Given this evidence, we cannot say that the manner in which Meade wired the bars was so unforeseeable to Control that the question should have been withdrawn from the jury. Ultimately, the jury concluded that Meade bore 80% of the fault for the accident, and charged Control with just 5% of the fault, vindicating both Control's position that Meade was primarily responsible for Johnson's mishap, and the trial court's decision to submit the question to the jury.

## II. Jury Instruction

### A. Standard of Review

▮▮▮▮ Instruction of the jury is left to the sound judgment of the trial court, and our review of a trial court's decisions in this regard is highly deferential: we will not disturb the court's judgment absent an abuse of discretion. *Smock Materials Handling Co. v. Kerr,* 719 N.E.2d 396, 402 (Ind.Ct.App.1999). A trial court abuses its discretion by refusing a tendered instruction only when: (1) the instruction correctly states the law, (2) the evidence supports the instruction, and (3) the substance of the charge is not covered by other instructions. *Id.* Further, errors in instruction are harmless and do not require reversal where the verdict would have been no different had the jury been properly instructed. *Id.*

## B. Analysis

 Control tendered the following jury instruction:

An intervening cause is an action by a third party or agency that breaks the causal connection between the defendant's alleged negligence and the plaintiffs' injury. This intervening cause then becomes the direct cause of the injury.

If you decide that the injury to the plaintiff, John Johnson, would not have occurred without the action of the third party or agency, then the plaintiffs cannot recover from the defendant.

However, if you find that the defendant acted negligently and could have reasonably foreseen the action of the third party or agency, then the defendant can still be liable for the plaintiffs' injuries.

(R. 142.) The instruction was not given. According to Control, the court's refusal to give this instruction was error because the instruction accurately stated the law of Indiana and was supported by evidence in the record that Meade's intervening negligence broke the chain of causation.

As noted above, it was for the jury to decide whether Control proximately caused Johnson's accident, and whether Meade's subsequent negligence was a reasonably foreseeable intervening cause. The import of Control's argument here is that if these were questions of fact for the jury, the trial court's refusal to give the tendered instruction effectively withdrew from the jury the option of finding that Meade's negligence was an unforeseeable intervening cause breaking the chain of causation and relieving Control of liability for the accident. We disagree.

This court has recognized that "[t]he comparison of fault inherent in the doctrine of intervening cause has been incorporated into our comparative fault system." *L.K.I. Holdings, Inc. v. Tyner,* 658 N.E.2d 111, 120 (Ind.Ct.App.1995). Here, the court instructed the jury to:

decide this case according to the Indiana law of comparative fault. The term "fault" refers to conduct that makes a person responsible, in some degree, for an injury. The type of fault at issue in this case is negligence.

(Final Jury Instr. No. 29. R. 125.) The court's instructions defined negligence as "the failure to exercise reasonable or ordinary care," Final Jury Instr. No. 15 (R. 110), and proximate cause as "that cause which produces injury complained of and without which the result would not have occurred," and which leads "in a natural and continuous sequence to the resulting injury." (Final Jury Instr. No. 17. R. 112.) The court further instructed the jury that Control had named Meade as a nonparty, and instructed the jury to "treat [Meade] as you would any other defendant in assessing fault." (Final Jury Instr. No. 20. R. 115.) The court explained the jury's responsibility to determine and apportion fault as follows:

"*First,* you must decide the percentage of fault, if any, for ... Johnson, ... Control ... and Meade ... in the proximate cause of [Johnson's] injuries and damages. These percentages *must* total 100%."

(Final Jury Instr. No. 30 (emphasis in original). R. 126.) The jury was further instructed as follows:

If you find [Control] is not at fault, then your verdict should be for [Control] and no further deliberation is necessary.

If you find [Control] was at fault, you must assess the fault on a percentage basis between ... Johnson, ... Control, ... and the nonparty, Meade Electric Company, Inc. The percentage of fault assessed to each party and nonparty will allow you to decide whether [Johnson] and his wife are entitled to recover damages, and if so, the amount of damages.

(*Id.* R. 126.)

The jury here was given the opportunity to weigh and compare the respective fault of Meade, Control, and Johnson by deter-

mining whether their actions were negligent, and whether they proximately caused the accident. The jury was specifically instructed that, when making these determinations, it could conclude that Control bore no fault. The court's instructions on negligence, proximate cause and comparative fault covered the substance of the instruction proffered by Control. The trial court therefore did not err in refusing Control's tendered instruction.

### III. Admonishment of Jury Following Remarks of Counsel During Closing Argument

#### A. Standard of Review

 All decisions regarding the orderly conduct of trial not otherwise regulated by statute or rule are generally within the discretion of the trial court. *Archem, Inc. v. Simo,* 549 N.E.2d 1054, 1060 (Ind.Ct.App.1990). The maintenance of control over arguments of counsel is such a matter, and a court's exercise of this control is not reversible error unless the court has abused that discretion. *Id.* *See also, Stephens v. Shelbyville Central Schools,* 162 Ind.App. 229, 318 N.E.2d 590, 592 (1974).

#### B. Analysis

The jury learned during trial that Johnson had settled his claims against Meade for an undisclosed sum of money. During final argument, Control's counsel reminded the jury of this settlement, and stated, "[w]hat [Johnson's counsel] wants, Ladies and Gentlemen, is to have his cake and eat it too. He wants to receive full settlement with Meade for his client's injuries and damages, and he also wants Control to pay for the same damages and injuries." (R. 45.) Johnson objected, arguing that this statement was improper since there was no evidence that Meade's settlement was in full compensation for Johnson's alleged damages. The court agreed, and admonished the jury to disregard any implication that Johnson had already fully recovered for his damages through the settlement with Meade. Control argues that the court's admonishment was impermissibly prejudicial because it essentially invited the jury to conclude that Johnson was entitled to additional damages.

 Attorneys may not argue matters not in evidence. *Jackson v. Beard,* 146 Ind.App. 382, 255 N.E.2d 837, 848 (1970). Although the jury was aware of Meade's settlement, no evidence was presented as to the amount of the settlement, or that the settlement fully compensated Johnson for his alleged injuries. It is true that counsel may present argument regarding proper inferences that may be drawn from the evidence, and "may draw reasonable conclusions from the evidence on his own system of reasoning." *Id.* However, in the absence of any evidence regarding the amount of Meade's settlement, the jury could not properly infer that Johnson had been fully compensated for his damages. The only thing the jury could properly conclude from the mere fact of the settlement was that Johnson had been compensated for damages he sustained as a result of Meade's negligence. Therefore, the trial court did not abuse its discretion by admonishing the jury to disregard counsel's comments.

 Even if it had been appropriate to infer from the fact of Meade's settlement that Johnson had already fully recovered for his damages such that Control should have been entitled to present argument to that effect, a contention not advanced by Control, the court's admonishment in no way prejudiced Control. After the court instructed the jury to disregard the comments of Control's counsel, counsel continued his argument along the same lines, stating:

> [w]hat we know, Ladies and Gentlemen, is that [Johnson's counsel], on behalf of his clients approved the settlement with Meade for this case based upon the injuries that his client had. And we are left here with allegations that Meade's conduct is attributable to control techniques [sic]. Basically, what he wants us to be responsible for is what Meade did wrong here, and we're not responsible for what Meade did wrong here. Meade was re-

sponsible for that, and that's why they settled the case.

(R. 45.) The court was not asked to admonish the jury following these comments. Control was permitted to pursue essentially the same line of argument a second time without objection, and was not deprived of any opportunity to make its point to the jury. Even if the court's admonishment had been erroneous, the error would have been harmless.

## IV. Jury Verdict

### A. Standard of Review

▮▮▮▮▮ Our review of a claim that an award of damages is inadequate is limited: we may neither reweigh the evidence, nor judge the credibility of witnesses. *Buckland v. Reed,* 629 N.E.2d 1241, 1244 (Ind. Ct.App.1994). Instead, we look only to the evidence and inferences therefrom which support the jury's verdict. *Landis v. Landis,* 664 N.E.2d 754, 756 (Ind.Ct.App.1996). The jury is in the best position to consider the evidence, and we will not substitute our idea of a proper award for that of the jury, so long as the damages are within the scope of the evidence. *Prange v. Martin,* 629 N.E.2d 915, 922 (Ind.Ct.App.1994); *Burris v. Riester,* 506 N.E.2d 484, 485 (Ind.Ct.App.1987). Thus, if there is any evidence in the record that supports the amount of the award, even if it is variable or conflicting, the award will not be disturbed. *Landis,* 664 N.E.2d at 756. A verdict will be reversed only upon a finding that, based upon the evidence, the amount of damages awarded indicate that the jury was motivated by prejudice, passion, partiality, corruption or consideration of some improper element. *Id.*

### B. Analysis

▮▮▮ Johnson presented substantial evidence at trial concerning his serious and permanent burn injuries, including evidence of his extensive medical treatment, his substantial medical expenses, and his physical pain and suffering. He also presented evidence of significant lost wages. Control did not present contrary evidence at trial, and does not take issue with the evidence of Johnson's damages here. Rather, Control argues that the jury's award of $2,000,000 was excessive because Johnson's unpaid medical expenses and lost wages amounted to only about 10% of the award, and because Johnson has returned to work and will probably not incur medical expenses in the future.

Control cites no authority, and there appears to be none, supporting its proposition that an award of damages in a personal injury case, otherwise supported by the evidence, is necessarily excessive simply by virtue of the amount of the award itself or the proportional relationship of the award to a plaintiff's pecuniary loss. Rather, the weight of the authority is to the contrary. *See, e.g., Rieth–Riley Const. Co. v. McCarrell,* 163 Ind.App. 613, 325 N.E.2d 844, 849 (1975); *Dwyer v. McClean,* 133 Ind.App. 454, 175 N.E.2d 50, 52 (1961).

Moreover, Control's argument with regard to Johnson's return to work and absence of future medical treatment is unavailing. First, Johnson presented evidence that while he returned to work, he no longer performed lucrative overtime duties as a result of his accident, and the jury was entitled to consider this evidence when reaching its verdict. Further, even if Johnson will require no further medical treatment, the jury was presented with substantial evidence regarding Johnson's severe and permanent burn injuries, and his extensive medical treatment. This evidence, combined with the evidence of Johnson's lost wages, none of which Control disputes, was sufficient to support the award, and we cannot say that the jury was motivated by prejudice, passion, partiality, corruption or consideration of some other improper element.

Judgment Affirmed.

RILEY, J., and BARNES, J., concur.