**ADAMI–SAENGER PARTNERSHIP I, d/b/a North Village Mall, Appellant (Defendant),**

v.

**Dorothy WOOD, d/b/a Village Floral, Appellee (Plaintiff).**

No. 71A04–9007–CV–338.

Court of Appeals of Indiana, Fourth District.

April 4, 1991.

Mark J. Phillipoff, South Bend, for appellant.

Fred R. Hains, South Bend, for appellee.

CHEZEM, Judge.

### Case Summary

Defendant/Appellant, Adami–Saenger Partnership I d/b/a North Village Mall (Adami), appeals the trial court's award of lost profits and punitive damages to Plaintiff/Appellee, Dorothy Wood d/b/a Village Floral (Wood). We affirm in part and reverse in part.

### Issues

I. Whether the trial court's award of lost net profits was clearly erroneous.

II. Whether the trial court's award of punitive damages was clearly erroneous.

### Facts

Wood leased space from Adami to sell floral arrangements, wreaths, and other gift items at North Village Mall from January 1, 1988 through July 31, 1988 for $300.00 rent each month. Patricia Lee (Lee), manager of the Mall, prepared the lease.

Wood constructed a kiosk and placed it in the common area near the north end of the Mall. In March, Wood began to use a portion of another space (March space) in the Mall and voluntarily paid an additional $200.00 rent.

Lee took exception to Wood's behavior while a tenant of the Mall, and decided not to renew Wood's lease. Her decision was supported by a mall consultant, Gordon Johnson, who suggested that the Mall eliminate kiosk space.

By letter dated June 27, Lee informed Wood that her lease would not be renewed and that Wood should vacate the Mall on July 31. Wood attempted to negotiate a new lease with Lee, but when it was clear Lee would not negotiate, Wood attempted to negotiate a lease with Gordon Johnson; he also would not negotiate.

On July 18, Wood met with Harry Bieberstein, attorney-in-fact for Adami. On that day, Bieberstein verbally offered Wood a three year lease of a vacant pet store space, located at the south end of the Mall for $1,860.00 per month. Wood accepted Bieberstein's offer and waited for a copy of the lease; she did not vacate.

By letter dated July 29, Bieberstein informed Wood that he was rescinding his verbal offer and reminded her to vacate her space by July 31. Wood did not vacate, and after the Mall closed, Lee and her assistants removed Wood's property from the common area and placed it in the March space. Lee's assistants damaged Wood's kiosk (value: $1,400.00 to $1,800.00 labor and $600.00 to $800.00 material), jelly cabinet ($237.00); fresh flowers (retail of $590.00 and wholesale of $295.00) also died. Prior to electing to use "self-help," Lee consulted the Mall's attorneys about eviction proceedings; Lee, however, did not want to wait another sixty to ninety days. Lee had the locks to the March space changed which prevented Wood access to her property for one day. Lee then permitted removal of the property on August 2, 4, 5, 8 and 11.

Wood neither employed an accountant nor made an effort to maintain accurate business records; she operated the business on a cash in/cash out basis. Wood did not file tax returns for 1988 and did not pay sales tax collected in 1988. For the first seven months of 1988, Wood earned $47,347.63 in sales. Wood's gross profit on sales (retail price less wholesale cost) was calculable because she doubled her wholesale cost of fresh flowers, baskets, silk flowers, gift items and Christmas poinsettias to arrive at her retail price; potted flowers were marked up only fifty percent. Wood established some business expenses [1]: flower cooler (cost $2,504.00 but amount of loan, balance or monthly payment not established), cash register ($63.38 per month), storage space ($200.00 per month), cash draw ($1,500.00 per month). Wood testified that her projected sales for the last five months of 1988 would be $70,000.00, leaving her with a gross profit of approximately one-half of that amount. After deducting her business expenses, Wood estimated that her net profit would be $25,000.00 to $26,000.00.

On January 31, 1990, the trial court entered its amended findings and conclusions which awarded Wood a judgment of $28,302.00 (which included an award of lost profits of $20,000.00 and a punitive damage award of $5,770.00).

### Discussion and Decision

### I

Adami claims that no evidence of Wood's business expenses was admitted into evidence; thus, the court could not properly award Wood compensation for her lost profits. However, the record discloses that Wood testified that her expenses would reduce her gross profit, on her projected sales of $70,000.00, from $35,000.00 to $25,000.00 or $26,000.00. The issue then becomes whether this testimony is sufficient to allow a $20,000.00 award for lost profits.

In rendering its decision, the trial court made specific findings of fact and conclusions of law; these can only be set aside if they are clearly erroneous. *Indiana Dept. of Correction v. Stagg* (1990), Ind.App., 556 N.E.2d 1338, 1341, *trans. denied;* Ind. Trial Rule 52(A). We will consider only that evidence most favorable to support the judgment; however, nothing can be added to the findings of fact by presumption, inference or intendment. *Ind. & Mich. Elec. v. Terre Haute Indus.* (1987), Ind.App., 507 N.E.2d 588, *trans. denied* (1988), Ind., 525 N.E.2d 1247.

In reviewing an award of damages, we do not require any particular degree of mathematical certainty. *Farm Bureau Mut. Ins. Co. v. Dercach* (1983), Ind.App., 450 N.E.2d 537. Evidence of lost profits will not be considered uncertain "where there is testimony which, while not sufficient to put the amount beyond doubt, is sufficient to enable the [fact finder] to make a fair and reasonable finding." *Jerry Alderman Ford Sales, Inc. v. Bailey* (1972), 154 Ind.App. 632, 291 N.E.2d 92, *reh. denied* (1973), 154 Ind.App. 632, 294 N.E.2d 617.

We agree with Wood that the trial court's award of compensatory damages

---

1. Wood claims "[a] number of … business expenses were set forth on Exhibit 31." However, while we note that the ledger sheet contains numerous entries, it is difficult to ascertain their significance.

was within the scope of the evidence. Wood testified that her sales for the first seven months of 1988 totaled $47,347.63 and that her profit totaled $12,000.00 (the cost of goods sold was approximately one-half of the amount of sales). Wood also testified that she expected sales of $70,000.00 for the remaining five months due to the Christmas season and the sale of poinsettias. Wood noted that her profit would equal one-half of her sales or $35,000.00. After she deducted her expenses, Wood anticipated a profit of $25,000.00 or $26,000.00.[2] This evidence is not dissimilar to the type considered by us in *Farm Bureau* and *Jerry Alderman.*

In its findings, the trial court stated that "Ms. Wood's optimistic valuation of lost profits is unsubstantiated" and thus awarded her $20,000.00—an amount less than the profit anticipated by Wood. As the trial court's award of damages is supported by the record, we will not disturb the trial court's findings. *See Farm Bureau,* supra and *Jerry Alderman,* supra.

### II

Adami contends that the trial court erred in awarding punitive damages.

In Indiana, punitive damages are not generally recoverable for a breach of contract. *Dahlin v. Amoco Oil Corp.* (1991), Ind.App., 567 N.E.2d 806; *Arlington State Bank v. Colvin* (1989), Ind.App., 545 N.E.2d 572, 579, *trans. denied.* To recover punitive damages for breach of contract, a plaintiff is required to prove, by clear and convincing evidence, that the defendant's actions in breaching the contract were accompanied by malice, fraud, gross negligence, or oppressive conduct. *Dahlin,* supra; *Dow Chemical v. St. Vincent Hosp.* (1990), Ind.App., 553 N.E.2d 144, 150, *trans. pending; see also* Ind.Code 34–4–34–2. Moreover, the plaintiff must provide some evidence "that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, overzea-

lousness, mere negligence, or other such noniniquitous human failing." *Dow,* supra.

Here, the trial court incorrectly found that the evidence Wood introduced met this burdensome standard. No evidence of malice or fraud appears in the record. Certainly, Lee's decision to utilize self-help in evicting Wood was improvident. Such decision, however, is neither grossly negligent or so oppressive as to warrant the imposition of punitive damages. Moreover, the evidence was not inconsistent with the hypothesis that Adami's conduct was the result of mere overzealousness.

We affirm the award of lost net profits. We reverse the award of punitive damages.

BAKER, J., concurs.

CONOVER, J., dissents with separate opinion.

CONOVER, Judge, dissenting.

I respectfully dissent.

Future lost profits cannot be awarded in this action. The term of Wood's lease ended on July 31st, and she was granted no renewal of it. She was no longer one of the mall's tenants. Thus, future profits were a legal impossibility at that location.

Also, no punitive damages can be assessed in this case. Without an award of compensatory damages, punitive damages cannot be awarded. *Jochem v. Kerstiens* (1986) Ind.App., 498 N.E.2d 1241; *Rose Acre Farms, Inc. v. Cone* (1986) Ind.App., 492 N.E.2d 61, *reh. den'd., trans. den'd.*

I would vote to reverse and remand with instructions to enter judgment for the defendant.

---

**2.** Although Wood did not articulate that the $25,000.00 or $26,000.00 was her anticipated net profit, it is clear from her testimony that the figures represented lost net profits and not lost gross profits as Adami argues.