Ricky **WESTRAY**, Richardson Moving & Storage, Bekins Van Lines Co., and Miami Valley Moving & Storage, Inc., Appellants–Defendants,

v.

Dolores **WRIGHT**, John Wright and Samuel Wright b/n/k Dolores Wright, Appellees–Plaintiffs.

No. 45A04–0405–CV–275.

Court of Appeals of Indiana.

Sept. 14, 2005.

Karl L. Mulvaney, Nana Quay–Smith, Bingham McHale LLP, Indianapolis, IN, for Appellants.

Edward M. Kay, Paul V. Esposito, Clausen Miller, P.C., Chicago, IL, Pro Hac Vice.

Terrence M. Rubino, Rubino, Crosmer, Smith & Sersic, Dyer, IN, for Appellees.

## OPINION

BAKER, Judge.

Appellants-defendants Ricky Westray (Westray), Richardson Moving & Storage (Richardson), Bekins Van Lines Co. (Bekins), and Miami Valley Moving & Storage, Inc. (Miami Valley) (collectively, appellants) appeal from the trial court's rulings on a number of evidentiary issues, denial of their motion for judgment on the evidence, and denial of their motion to correct error. Following a concession made by appellants' counsel at oral argument [1] that dispensed with a number of appellants' arguments, the sole argument we must address is whether the punitive damages award was inappropriate because there was insufficient evidence to show that Westray had the required obdurate mental state.

The Wrights cross-appeal, contending that the trial court improperly reduced the jury's original punitive damages award because: (1) it should have taken into account the aggregate harm suffered by all of the accident victims in calculating the statutory cap on punitive damages; and (2) because their attorneys filed a lien against the entire punitive damages award, the trial court should not have been able to reduce the award thereafter.

Concluding, among other things, that the jury's award of punitive damages was inappropriate because there was not clear and convincing evidence that the appellants acted with the mental state sufficient to sustain such an award, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## FACTS

### A. The Accident

This case arises out of a motor vehicle accident that occurred near the intersection of Interstate 65 and the Indiana Toll Road on December 23, 1996. Westray is a professional truck driver on Richardson's payroll who was driving a semi truck on the night in question. Richardson and Miami Valley are sister corporations, and Richardson is an agent of Bekins. On December 23, Westray was driving a Bekins truck with the names of Richardson and Miami Valley on its side.

At approximately 9:00 p.m. on that evening, Westray's truck rear-ended a stopped vehicle driven by Dolores.[2] The

---

1. We heard oral argument in this case on August 25, 2005, in Indianapolis. We commend counsel for their able presentations.

2. Westray's truck also struck another vehicle, but the claims of the people in that vehicle are not at issue in this case.

parties vigorously dispute the series of events leading up to the accident. Westray was delivering household furnishings from Dayton, Ohio, to Waukegan, Illinois. He was alone, was not listening to the radio or a CD, and had an open map on his passenger seat. He had been driving for just over four hours prior to the accident, and there was no evidence that he was drowsy, intoxicated, or otherwise affected by any foreign substance. Westray recalls the roads being misty from drizzling rain, but an eyewitness remembers the road being dry.

As Westray approached the intersection, he traveled over rumble strips and past a sign indicating an upcoming traffic light. He estimates that he was traveling at approximately 55 miles per hour—within the legal speed limit—while an eyewitness estimates Westray's speed to have been approximately 35 to 40 miles per hour. He noticed an upcoming green traffic light and proceeded toward it. He also observed vehicles in the right-hand lane ahead of him, but at the time he looked up, there were no vehicles in the left-hand lane in which he was traveling.

Westray noticed in his rearview mirror a white vapor or smoke coming from the rear passenger side of the trailer, and he became concerned that his truck was experiencing mechanical problems. Westray either continued to pay attention to the vapor emanating from his truck or he looked down at the open map on the seat next to him to verify driving directions. Regardless of the reason, his period of inattention to the road lasted for approximately five to ten seconds. Tr. p. 318–19. While Westray paid attention to the vapor or the map, the light changed from green to red, and the Wrights' car moved from the right-hand lane into the left-hand lane, directly in front of Westray. When Westray again looked ahead at the road, the Wrights' car was ten to twenty feet directly ahead of him, and he could not brake quickly enough to avoid a collision. Westray denied that he was looking at the open map just before the accident. There were no skid marks on the pavement leading up to the point of impact.

In addition to Dolores, who was driving, seated in the rear of the Wrights' vehicle were Samuel—then two and one-half years old—and Dolores's mother-in-law and aunt. Samuel was thrown from the car, sustaining bruises and later experiencing nightmares, but was doing well at the time of trial. Dolores sustained bruises, soft tissue injuries, a scalp laceration, a probable concussion, and brain injuries leading to mild brain damage. Dolores's mother-in-law and aunt were killed.[3] The accident scene was particularly grisly because one of the deceased passengers was decapitated in the collision, and Dolores and Samuel—both conscious following the accident—were forced to view the gruesome scene as they awaited emergency personnel. Dolores has virtually no memory of the accident itself and continues to suffer from post-traumatic stress disorder (PTSD) as a result of the accident and its aftermath.

Indiana State Trooper David Eggers was the motor carrier enforcement officer dispatched to the scene. Trooper Eggers inspected Westray's vehicle for violation of federal regulations, and found seven equipment violations: a hole in the brake chamber, a spring problem on a parking brake, worn tires, rear brake lights, marker lights at the top of the trailer, an unmounted valve, and marker lights at the lower center of the trailer. Trooper Eggers testified that the violation involving the rear brake lights was serious enough to remove the vehicle from service, and further testi-

---

3. The claims of Dolores's deceased aunt and mother-in-law are not at issue in this case.

fied that none of the equipment violations contributed to the accident. There was no evidence that Westray consciously disregarded any existing violation.

### B. Bekins

Westray began driving for Bekins in 1985. Between 1985 and 1988, Westray was involved in four motor vehicle accidents, and his record includes a note indicating that all accidents appear on employees' driving records regardless of fault. Westray's record also indicates a number of citations for speeding.

In 1996, Bekins received the Department of Transportation's highest safety rating of "satisfactory." Tr. p. 739. Bekins had a policy of suspending drivers who had "more than three moving traffic violations during the immediate 12 months prior to qualification . . . ." Pl.Ex. 84B p. 3. This was a rolling calendar system such that the first calendar day of the rolling twelve-month period would drop off with each succeeding day. Pursuant to this policy, in 1990 Bekins suspended Westray for having more than three violations in the immediate twelve-month period.

### C. The Trial

On December 26, 1997, the Wrights sued the appellants, alleging that the appellants were negligent and acted with gross negligence or a willful, wanton, and conscious disregard for the Wrights' safety. Additionally, John filed a claim for loss of consortium. The Wrights requested compensatory and punitive damages. Westray admitted that he negligently operated his truck but denied gross negligence and willful and wanton misconduct. Bekins denied all wrongdoing. All denied liability for punitive damages.

The trial began on January 26, 2004. At trial, the Wrights offered into evidence a color photograph of Dolores's aunt's covered body lying on the ground at the accident scene. The trial court admitted the photograph over the appellants' objection that the photo was gruesome and highly prejudicial. Additionally, the Wrights offered evidence, over the appellants' objection, that in 2001—five years after the accident—the Department of Transportation fined Bekins $35,000 for logbook falsification.

The Wrights also presented expert testimony regarding Dolores's future wage and benefit loss as a result of the accident. Prior to the accident, Dolores was earning approximately $36,000 annually. She returned to work immediately after the accident and never earned less than $36,000, and at the time of trial she was earning $44,500 annually. At the time of the accident, she was a legal secretary for a Chicago law firm. On cross-examination, she testified that she was not a certified local area network level 3 (LAN–3) operator and has never taken classes to become certified. Dolores also admitted that she had previously failed the examination to become a Novell software administrator, and was unfamiliar with the term "LAN–3 operator." Tr. p. 572. But the Wrights' expert economist estimated her future lifetime wage and benefit loss to be over $1.5 million, basing his opinion on instructions from the Wrights' attorney to assume that Dolores would have been a LAN–3 operator within 5 years if not for the accident. The trial court denied the appellants' motion to bar the expert testimony, ruling that issues with respect to the bases for his opinions merely affected the weight of his testimony.

Additionally, the trial court overruled appellants' objections to two jury instructions. One regarded Dolores's alleged loss of earnings. The second regarded Bekins's alleged violation of 21 Indiana and federal statutes and regulations, instruct-

ing the jury that "If you find from a preponderance of the evidence that the defendants violated any of these Federal or State regulations or statutes on the occasion in question and that the violation was without excuse or justification, such conduct would constitute negligence, and may also constitute gross negligence or willful, wanton, or conscious disregard for the safety and rights of others on the part of the defendants." Tr. p. 947. The appellants objected to this instruction, arguing that the Wrights had failed to show any causal connection between the violations and the accident.

The appellants twice moved for judgment on the evidence as to punitive damages, and the trial court denied both motions. On January 30, 2004, the jury returned a verdict against the appellants and awarded compensatory damages as follows: $1,020,000 to Dolores; $25,000 to Samuel; and $100,000 to John. The jury also awarded punitive damages of $15,000,000 to the Wrights without allocation. On February 11, 2004, the Wrights' attorney filed a lien on the punitive damages award.

On March 1, 2004, the appellants filed a motion to correct error seeking judgment or a new trial as to the punitive damages claim. They also requested a reduction of the punitive damages award to $3,435,000 pursuant to Indiana Code section 34–51–3–4.[4] On April 23, 2004, the trial court reduced the punitive damages award to $3,435,000 but otherwise denied appellants' motion. The appellants appeal the denial of their motions for judgment on the evidence and motion to correct error, and the

Wrights cross-appeal the trial court's reduction in the punitive damages award.

## DISCUSSION AND DECISION

### I. Appeal

#### A. Oral Argument

In the appellants' brief, they raise a number of contentions apart from their argument regarding the punitive damages award. In particular, they contend that the trial court erred in: (1) admitting a photograph of the covered body of Dolores's aunt at the scene of the accident; (2) permitting a witness to testify that Bekins paid a $35,000 fine in 2001—five years after the accident—for logbook falsification; (3) instructing the jury regarding the twenty-one Indiana and federal statutes and regulations allegedly violated by Bekins even though there was no causal link between the violations and the accident; and (4) admitting the Wrights' expert testimony regarding Dolores's future wage and benefit loss and by instructing the jury as to that loss.

At oral argument, counsel for the appellants reminded this court that Westray and Bekins concede Westray's negligence. Additionally, counsel voiced his clients' belief that this accident was tragic and informed us that while they firmly believe that the trial court erred in committing the above-described actions, they also believe that the final amount awarded to the Wrights as compensatory damages—just over $1 million—was appropriate and just given the circumstances. As all of the above-described arguments ultimately go to the jury's determination regarding neg-

---

4. Indiana Code section 34–51–3–4 requires that a punitive damages award may not exceed three times the amount of the compensatory damages award. In this case, the jury awarded a total of $1,145,000 in compensatory damages to the Wrights. Originally, its punitive damages award totaled $15,000,000, which exceeded the statutory limit. Accordingly, the trial court reduced the punitive damages to $3,435,000, which is three times the amount of the compensatory damages award.

ligence and compensatory damages awarded for negligence, therefore, the appellants agreed to concede these arguments and focus entirely on the punitive damages award. While we are troubled by a number of the trial court's rulings, particularly the jury instruction regarding statutory violations with no causal connection to the accident and the testimony and instruction regarding Dolores's future wage and benefit loss, we agree with the appellants that there is no need to examine those issues inasmuch as they relate only to the amount of compensatory damages, which is admittedly appropriate.

### B. Punitive Damages

█ The appellants contend that the trial court erred in denying their motions for judgment on the evidence and request for a new trial. In particular, they argue that the jury erred in awarding punitive damages to the Wrights because there was insufficient evidence to show that Westray had the required obdurate mental state.

█ The appellants seek judgment on the evidence or a new trial with respect to punitive damages. As we consider these arguments, we note that the purpose of a motion for judgment on the evidence is to test the sufficiency of the evidence. The grant or denial of a motion for judgment on the evidence is within the broad discretion of the trial court, and we will reverse only for an abuse of that discretion. *Smock Materials Handling Co., Inc. v. Kerr,* 719 N.E.2d 396, 401 (Ind.Ct.App. 1999).

█ When reviewing a trial court's ruling on a motion for judgment on the evidence, we examine the evidence and the reasonable inferences most favorable to the plaintiff from a quantitative as well as a qualitative perspective. *Id.* Quantitatively, evidence may fail only where there is none at all. Qualitatively, however, it fails when it cannot reasonably be said that the intended inference may logically be drawn therefrom. *Id.* The failure of an inference may occur as a matter of law when the intended inference can rest on no more than speculation or conjecture. A judgment on the evidence is proper only when there is a total absence of evidence in favor of the plaintiff or when the inference intended to be proven by the evidence cannot logically be drawn from the proffered evidence without undue speculation. *Id.* Additionally, a new trial is warranted only when a verdict is against the clear weight of the evidence, and we review the denial of a new trial for an abuse of discretion. *Paragon Family Restaurant v. Bartolini,* 799 N.E.2d 1048, 1055 (Ind.2003).

█ Because punitive damages are imposed to deter and punish wrongful activity, they are quasi-criminal in nature and require a different showing than that required for an award of compensatory damages. *Cheatham v. Pohle,* 789 N.E.2d 467, 471 (Ind.2003). Indeed, a plaintiff must prove the facts supporting punitive damages by clear and convincing evidence, a burden that is "but minutely below the 'reasonable doubt' standard." *Orkin Exterminating Co. v. Traina,* 486 N.E.2d 1019, 1022 (Ind.1986), *superseded in part on other grounds by Erie Ins. Co. v. Hickman,* 605 N.E.2d 161, 162 (Ind.1992).

According to our Supreme Court, "the perverseness that public policy will permit the courts to punish [by awarding punitive damages] is conscious and intentional misconduct which, under the existing conditions, the actor knows will probably result in injury." *Id.* In other words, the defendant must have "subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences." *Id.* The tortious conduct must be marked by mal-

ice, fraud, gross negligence, or oppressiveness not resulting from "a mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other noniniquitous human failing." *Bud Wolf Chevrolet, Inc. v. Robertson,* 519 N.E.2d 135, 137 (Ind.1988).

The Wrights emphasize that gross negligence is a proper basis for an award of punitive damages. Our Supreme Court has defined "gross negligence" as " '[a] conscious, voluntary act or omission in reckless disregard of ... the consequences to another party.' " *N. Ind. Pub. Serv. Co. v. Sharp,* 790 N.E.2d 462, 465 (Ind.2003) (quoting *Black's Law Dictionary* 1057 (7th ed.1999)) (omission in original).

The appellants concede that Westray acted negligently but deny that he acted with gross negligence sufficient to sustain an award of punitive damages. They point to a number of federal truck accident cases in which mere negligence on the driver's part was insufficient to support punitive damages. *See, e.g., Purnick v. C.R. England, Inc.,* 269 F.3d 851 (7th Cir.2001) (holding that evidence that driver had falsified his logs to hide the amount he had driven over the week prior to the accident, was "mesmerized" by the road, failed to brake before impact, and could not recall when he first saw plaintiff's vehicle was insufficient to prove his mental state to sustain punitive damages because there was no proof that he knew his actions would probably cause harm); *Wanke v. Lynn's Transp. Co.,* 836 F.Supp. 587 (N.D.Ind.1993) (holding that evidence of excessive speed, standing alone, was insufficient to show that driver knew that his speed constituted an obvious danger yet chose to ignore that danger so as to support punitive damages); *Austin v. Disney Tire Co.,* 815 F.Supp. 285 (S.D.Ind.1993) (holding that evidence demonstrating a lack of skill as a driver does not lead to a

reasonable inference that driver acted with conscious disregard for the impending danger he was creating so as to support punitive damages); *Samuel v. Home Run, Inc.,* 784 F.Supp. 548 (S.D.Ind.1992) (holding that merely creating a dangerous situation as a driver does not support a further inference that the conduct was wanton or morally blameworthy so as to support punitive damages), *superseded in part on other grounds by Erie Ins. Co.,* 605 N.E.2d at 162.

The Wrights, in turn, point to a litany of cases in which they contend the court concluded that gross negligence occurs when a driver's inattention is more than momentary. *See, e.g., Clouse v. Peden,* 243 Ind. 390, 394, 186 N.E.2d 1, 2 (Ind.1962) (driving on a loose gravel country road at 75–80 miles per hour, "seeing how fast the car would run," in spite of three warnings to slow down); *Buroker v. Brown,* 241 Ind. 421, 422, 172 N.E.2d 849, 850 (Ind.1961) (driving 85–90 miles per hour on "very winding," wavy blacktop around curves, over bridges, and by shady spots patched with ice); *Berg v. Rasmuss,* 176 Neb. 340, 125 N.W.2d 905, 907 (1964) (intoxicated driver kissing sleeping passenger); *Gustason v. Vernon,* 165 Neb. 745, 87 N.W.2d 395, 398–99 (1958) (driver turning to the rear to play joke notwithstanding defective steering gear needing constant attention); *Haggerty v. Sullivan,* 301 Mass. 302, 303, 17 N.E.2d 154, 154–55 (Mass.1938) (driver turning to rear seat passenger while traveling at 55–60 miles per hour on slick road).

After reviewing the record, it is apparent to us that this case is more analogous to the cases in which punitive damages were not appropriate than to those in which the driver's behavior surpassed mere negligence. Westray was not speeding. He was alone and was not listening to the radio or a CD. He had been driving

for just over four hours prior to the accident, and there was no evidence that he was drowsy, intoxicated, or otherwise affected by any foreign substance. Just before he looked away from the road, the traffic light was green and there were no vehicles in the lane in front of him. Tr. p. 216. The only evidence in the record that offers a concrete amount of time during which Westray looked away from the road suggests that his inattention lasted from five to ten seconds. Tr. p. 318–19.

The Wrights counter that the evidence showed that Westray consciously chose to divert his attention from the road while approaching a traffic light on an interstate highway after passing rumble strips and warning signs. According to the Wrights, Westray should have known that his 65,-000–pound vehicle would cause injury should it collide with another vehicle. He knew that other vehicles were ahead of him nearer to the stoplight.

In the aggregate, the record reveals a truck driver who was clearly negligent in the operation of his vehicle. Tragically, his negligence resulted in fatalities and forever changed the lives of the survivors. But there is simply not clear and convincing evidence that his behavior exceeded mere negligence. Nothing in the record indicates that he acted purposefully, with malice, or with gross negligence. Charging him with constructive knowledge of the dangerousness of his vehicle is insufficient to reach the mental state that is required to sustain a punitive damages award. Accordingly, we conclude that the jury's award of punitive damages as to Westray was improper and that the trial court should have granted the appellants' motion for judgment on the evidence.

In addition to claiming that Bekins is vicariously liable for Westray's acts, the Wrights also claimed that Bekins was directly liable for wrongly hiring, retaining, and entrusting a truck to Westray. As support for the punitive damages award against Bekins on this claim, the Wrights point to Westray's logbook and equipment violations, arguing that it shows that Bekins did not teach Westray to regard safety as paramount. The Wrights also point to Westray's driving record with Bekins, which is replete with speeding tickets and other violations, noting that Bekins never reprimanded him during his more than ten years with the company.

There is simply no evidence to support an award of punitive damages against Bekins directly. The Wrights failed to offer clear and convincing proof that. Bekins consciously disregarded knowledge that Westray was a substantial danger to motorists so as to support punitive damages. As to Westray's hiring, there was no evidence that he lacked a valid driver's license or was otherwise unqualified. Moreover, pursuant to Bekins's regulations—more stringent than federal requirements—Westray was qualified and competent to drive. There was no evidence in the record suggesting that the circumstances surrounding Westray's previous accidents or speeding tickets involved substantially similar conduct or circumstances to this case. Ultimately, therefore, the punitive damages award was inappropriate insofar as it was designed to punish Bekins directly.[5]

## II. Cross–Appeal

The Wrights cross-appeal the trial court's reduction in the punitive damages award from $15,000,000 to $3,435,000. In

5. Inasmuch as we conclude that the punitive damages award was inappropriate in total, we need not consider the appellants' argument that the reduced award was excessive and unconstitutional.

particular, they contend that the trial court erred in reducing the award because it should have taken into consideration the aggregate harm to all of the victims—including non-parties—which totaled $15,000,000 and because they filed an attorney lien against the entire amount before the trial court reduced it.

Inasmuch as we have concluded that the punitive damages award was inappropriate, the arguments that the Wrights raise in their cross-appeal are no longer at issue. We note briefly, however, that to argue that the trial court should have been permitted to take into consideration the compensatory damages awarded to separate plaintiffs in a completely independent lawsuit when that information was not properly available to this jury is to approach the bounds of reason and logic.

## CONCLUSION

In sum, we conclude as follows: (1) the jury's finding of negligence with respect to appellants and its corresponding award of compensatory damages are appropriate; and (2) the jury's award of punitive damages was inappropriate inasmuch as there was not clear and convincing evidence that Westray or Bekins acted with the mental state sufficient to sustain such an award.

The judgment of the trial court is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

RILEY, J., and MATHIAS, J., concur.