MANUEL LEE GOMEZ b/n/f MANUEL GOMEZ and BRANDON GOMEZ b/n/f ROBERT GOMEZ and MYRNA GOMEZ, Appellants,
v.
LIVING STONES FELLOWSHIP CHURCH, INC., THE CAUSE YOUTH FOUNDATION, RONALD JOHNSON, JR., DERRICK CROFFORD and RYAN VOYLES, Appellees.
No. 45A03-0512-CV-610
Court of Appeals of Indiana.
December 18, 2006
JOHN P. BUSHEMI, John P. Bushemi & Associates Merrillville, Indiana, ATTORNEYFOR APPELLANTS.
GARRETT V. CONOVER, Bokota Ehrhardt McCloskey Wilson & Conover, P.C., Merrillville, Indiana, ATTORNEY FOR APPELLEES.

MEMORANDUM DECISION
MATHIAS, Judge.
A jury in Lake Superior Court awarded plaintiffs, Manuel Lee Gomez ("Manuel") and Brandon Gomez ("Brandon") compensatory and punitive damages. Ruling on a motion to correct error, the trial court vacated the jury's award of punitive damages. The Gomezes raise several issues on appeal, one of which we find dispositive: whether the trial court abused its discretion in vacating the punitive damages award.[1]
Concluding that the Gomezes failed to present any evidence of Appellees' mental state supporting the award of punitive damages, we affirm.

Facts and Procedural History[2]
On December 31, 2001, Manuel, age 13, and Brandon, age 14, attended a Youth Bash New Years Eve lock-in. The event was sponsored, planned, and promoted by Pastor Ronald Johnson, Jr., Living Stones Fellowship Church, The Cause Youth Foundation, Colin Adams, Derrick Crawford and Ryan Voyles. More than one hundred children attended this event. The sponsors of the overnight event conducted several competitions throughout the evening, offering prizes donated by local businesses.
One such competition was a "food testing" game. Ronald Johnson ("Johnson"), asked some of the children to volunteer for the "food testing" game, which was based off of a Christian college variety show skit he had witnessed called the "sick and wrong" game. For this particular game, Johnson offered a $50 Best Buy gift certificate to the children who volunteered to play. Johnson picked four youths, including Manuel and Brandon, to come up on stage.
First, the four adolescents were all invited to taste something good like chocolate milk. Then Johnson introduced the "Vegematic" machine, which was played by Ryan Voyles ("Voyles"). Voyles was wheeled out on stage. Then Johnson poured various foods into Voyles's mouth that he chewed up and spit into a cup. Some of the foods were dog food, cauliflower, cottage cheese, salsa, sauerkraut, and pickle juice. The ingredients were all stirred together, and then Johnson offered each of the children a gift card if he or she would drink the mixture, which he called "Kraut Nog." Two of the girls who had volunteered left the stage. Then Johnson handed the cup to Brandon, while he encouraged the onlooking crowd to participate by chanting "sick and wrong." Next, the mixture was handed to Manuel, who was also encouraged to drink it. Both of the boys ultimately drank the mixture despite their revulsion.
Brandon threw up several times that evening and again the next day. Brandon also complained of diarrhea and minor headaches. That evening when Manuel got home, he had a stomachache and felt as if he was going to throw up. His throat hurt for the next three days and his stomach cramps continued. The next day, both children's parents' took them to see a physician who conducted several tests to determine if the boys had contacted any diseases from Voyles. Brandon and Manuel also had to complete stool culture exams. Both boys worried about what possible diseases, including HIV or tuberculosis, they could have contacted from Voyles. Both boys tested positive for only strep throat and were treated with antibiotics.
On April 11, 2003, Manuel and Brandon filed an Amended Complaint against Living Stones Fellowship Church, The Cause Youth Foundation, Christian Happenings, Colin Adams, Derrick Crofford, Johnson and Voyles (collectively "the Church"). The complaint alleged battery, negligence, and intentional infliction of emotional distress. The Lake Superior Court conducted a jury trial from April 11-18, 2005. The jury found in favor of Brandon and Manual and awarded each boy a total of $10,000 in compensatory damages. The jury also found against the Church in the amount of $45,000 in punitive damages for each boy. The compensatory damage awards are not at issue in this appeal.
On May 18, 2005, the Church filed a motion to correct error, arguing that the verdict was excessive and contrary to law, and that the verdict was not supported by sufficient evidence. The trial court held a hearing on the motion on October 25, 2005. Subsequently, on November 17, 2005, the trial court granted the motion to correct error in part, concluding that the evidence did not support the jury's award of punitive damages, and vacating the award of $45,000 for each boy. Brandon and Manuel now appeal. Additional facts will be provided as necessary.

Standard of Review
When the trial court granted the Church's motion to correct error, it entered final judgment on the evidence, concluding that the evidence was insufficient to support an award of punitive damages. A trial court has wide discretion to correct error. Dughaish ex rel. Dughaish v. Cobb, 729 N.E.2d 159, 167 (Ind. Ct. App. 2000), trans. denied. However, this remedy is available only where the evidence is insufficient to support the verdict as a matter of law. Carbone v. Schwarte, 629 N.E.2d 1259, 1261 (Ind. Ct. App. 1994). The trial judge sits as a "thirteenth juror" and must determine whether in the minds of reasonable persons a contrary verdict should have been reached. City of Carmel v. Leeper Elec. Servs., Inc., 805 N.E.2d 389, 392 (Ind. Ct. App. 2004), trans. denied (citations omitted).
In determining whether the trial court properly entered final judgment on the evidence, this court employs the same standard of review as the trial court. Carbone, 629 N.E.2d at 1261. We must consider only the evidence and reasonable inferences favorable to the non-moving party. Id. We may not weigh conflicting evidence or judge the credibility of witnesses. Id. Therefore, it is our duty to affirm the trial court's final judgment on the evidence unless it is clearly demonstrated that the trial court abused its discretion. City of Carmel, 805 N.E.2d at 392.

Discussion and Decision
Manuel and Brandon contend that the trial court abused its discretion when it granted the Church's motion to correct error under Indiana Trial Rule 59(J)(7), vacating the award of punitive damages. Trial Rule 59(J) provides, in part:
The court, if it determines that prejudicial or harmful error has been committed, shall take such action as will cure the error, including without limitation the following with respect to all or some of the parties and all or some of the errors . . . (7) In reviewing the evidence, the court shall . . . enter judgment, subject to the provisions herein, if the court determines that the verdict of a non-advisory jury is clearly erroneous as contrary to or not supported by the evidence, or if the court determines that the findings and judgment upon issues tried without a jury or with an advisory jury are against the weight of the evidence.
Ind. Trial Rule 59(J)(7) (2006).
"Whether a party may recover punitive damages is usually a question of fact for the fact finder to decide; but it may be decided as a matter of law." Reed v. Cent. Soya Co., Inc., 621 N.E.2d 1069, 1076 (Ind. 1993) (internal citation omitted), modified on reh'g at 644 N.E.2d 84 (Ind. 1994). "Because punitive damages are imposed to deter and punish wrongful activity, they are quasi-criminal in nature and require a different showing than that required for an award of compensatory damages." Westray v. Wright, 834 N.E.2d 173, 179 (Ind. Ct. App. 2005) (citing Cheatham v. Pohle, 789 N.E.2d 467, 471 (Ind. 2003)).
Proof that a tort was committed does not necessarily establish the right to punitive damages. Erie Ins. Co. v. Hickman, 622 N.E.2d 515, 520 (Ind. 1993). According to our supreme court, "the perverseness that public policy will permit the courts to punish [by awarding punitive damages] is conscious and intentional misconduct, which, under the existing conditions, the actor knows will probably result in injury." Orkin Exterminating Co., Inc. v. Traina, 486 N.E.2d 1019, 1023 (Ind. 1986), superseded in part on other
grounds by Erie Ins. Co. v. Hickman, 605 N.E.2d 161, 162 (Ind. 1992). Punitive damages may be awarded only if there is clear and convincing evidence that the defendant "acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." Id. "In other words, the defendant must have 'subjected other persons to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences.'" Westray, 834 N.E.2d at 179 (quoting Orkin Exterminating Co., 486 N.E.2d at 1022).
Punitive damages are designed to punish the wrongdoer and to dissuade him and others from similar conduct in the future. Miller Brewing Co. v. Best Beers of Bloomington, Inc., 608 N.E.2d 975, 983 (Ind. 1993). Because punitive damages are awarded in addition to damages that compensate for the specific injury, the injured party has already been awarded all that he is entitled to as a matter of law. INS Investigations Bureau, Inc. v. Lee, 784 N.E.2d 566, 582 (Ind. Ct. App. 2003), trans. denied (citation omitted). "Therefore, the sole issue is whether the defendant's conduct was so obdurate that he should be punished for the benefit of the general public." Id. Consequently, a plaintiff must establish that the public interest will be served by the deterrent effect of a punitive award. Annon II, Inc. v. Rill, 597 N.E.2d 320, 328 (Ind. Ct. App. 1992).
In its order on the motion to correct error, the trial court determined that
The plaintiffs did not demonstrate, by clear and convincing evidence, either malice, fraud, gross negligence or oppressiveness on the part of the defendants, which was not resulting from a mistake of law or fact, honest error of judgment, or overzealousness. The plaintiffs did not provide clear and convincing evidence that the defendants' behavior involved conscious and intentional misconduct which, under the then existing conditions, the defendants knew would probably result in injury. Nor did plaintiffs provide clear and convincing evidence that the defendants acted with an awareness of impending danger and with heedless indifference of the consequences.[3]
Appellant's App. at Tab G.
The Gomezes, however, contend that because Johnson had planned the game before the overnight, his actions were intentional and therefore warrant punitive damages. In particular, the Gomezes point out that Johnson said the game was "hilarious, gross and funny" and that "people who watched it had a good time." Br. of Appellant at 9.[4] Johnson also said that the element of surprise in the game was "what made the game fun." Id. Johnson also acknowledged several times that the game was "gross."
We fail to see how these comments demonstrate that Johnson subjected the two boys "to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences." See Westray, 834 N.E.2d at 179. We find no evidence presented that Johnson intended in any way to endanger their well-being. The Gomezes failed to present any evidence that Johnson was aware of the probability that the boys could contact a disease from Voyles by participating in this game or that drinking the concoction would make them ill. Rather, we conclude that the Gomezes have only presented evidence of Johnson's extreme lack of good judgment in determining the appropriateness of this game for young adolescents.
A defendant's error in judgment is not a legally sufficient rationale under which to award punitive damages. See Orkin Exterminating Co., 486 N.E.2d at 1022. "[T]his court has specifically stated that something more than a state of mind characterized as a heedless disregard of the consequences is required to impose punitive damages." Miller Pipeline Corp. v. Broeker, 460 N.E.2d 177, 185 (Ind. Ct. App. 1984) (citing Harper v. Goodin, 409 N.E.2d 1129 (Ind. Ct. App. 1980)); see also Peterson v. Culver Educ. Found., 402 N.E.2d 448, 455 (Ind. Ct. App. 1980); Prudential Ins. Co. v. Executive Estates, Inc., 174 Ind. App. 674, 699, 369 N.E.2d 1117, 1131 (1977). Instead, the evidence must also tend to negate any hypothesis of mere negligence, mistake of law or fact, or overzealousness. Whiteco Props, Inc. v. Thielbar, 467 N.E.2d 433, 438 (Ind. Ct. App. 1984) (citation omitted); see also Adami-Saenger P'ship I v. Wood, 568 N.E.2d 1112, 1115 (Ind. Ct. App. 1991). In essence, a plaintiff must prove oppressive conduct, or conduct that is wanton and willful. Davidson v. Bailey, 826 N.E.2d 80, 89 (Ind. Ct. App. 2005) (citation omitted).
For example, we overturned an award of punitive damages in a case where the appellant used self-help to evict the appellee by removing appellee's property from a leased building. Adami-Saenger P'ship I, 568 N.E.2d at 1115. We concluded:
No evidence of malice or fraud appear[ed] in the record. Certainly, [the appellant's] decision to utilize self-help in evicting [the appellee] was improvident. Such decision, however, is neither grossly negligent or so oppressive as to warrant the imposition of punitive damages. Moreover, the evidence was not inconsistent with the hypothesis that [the appellant's] conduct was the result of mere overzealousness.
Id.
Here, we conclude that Johnson's behavior, at most, demonstrated an extreme lack of good judgment and perhaps an overzealous attempt at entertaining the adolescents with "gross" games. Johnson testified as to one of the various competitions that he conducted that night:
It was a quiz show, but it was a quiz show with a Nickelodeon emphasis . . .. Well, we're not going to bodily harm them. . . that's not our goal this night. But we might dump flour on their heads, put shaving cream on [them for] the wrong answers. . . . [T]here was a funny, messy consequence. But that's whatthat's what teenagersthey enjoy that.
Tr. p. 91.
Regarding the food testing game, Johnson testified that he had first seen the skit take place at a Christian college variety show. Id. at 96-97. The skit was performed by hilarious guys, the "jokers" of the class, and Johnson thought it would be a good idea to use the skit for the overnight. Id. He acknowledged that "this is a gross-out game, but . .. if [he] believed at any point that having anybody ingest that stuff would be harmful to them in any way, [he] would not have allowed the game to go on." Id. at 99.
Today, there are numerous "reality" television programs featuring "gross" competitions. Johnson clearly wanted to emulate this trend to appeal to the adolescents who attended the overnight. The Gomezes have failed to present any evidence that Johnson acted with malice or that he subjected them to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences. See Orkin Exterminating Co., Inc., 486 N.E.2d at 1023. While we are repulsed by the "game" involved and do not condone it in any way, we conclude that as a matter of law the evidence does not demonstrate the type of mental state supporting an award punitive damages. See INS Investigations Bureau, 784 N.E.2d at 582. Therefore, the trial court appropriately granted the motion to correct error vacating the award of punitive damages.
Affirmed.
KIRSCH, C. J., and SHARPNACK, J., concur.
NOTES
[1] The Gomezes also raise the issue of whether the trial court erred in concluding that the jury award of punitive damages was excessive under Ind. Code § 34-51-3-4 (1999). However, we need not address this issue as we conclude that the trial court appropriately vacated the award of punitive damages.
[2] We remind Appellants' counsel that Indiana Rule of Appellate Procedure 50(A)(2)(a) (2006) states, "The Appellant's Appendix shall contain . . . the chronological case summary for the trial court."
[3] Appellants' counsel failed to follow Indiana Rule of Appellate Procedure 51(C) (2006), which states that "[a]ll pages of the Appendix shall be numbered at the bottom consecutively, without obscuring the Transcript page numbers, regardless of the number of volumes the Appendix requires." Therefore, we cite to the documents according to the lettered tabs in the Appellants' appendix.
[4] We admonish Appellants' counsel for failing to provide citations to the record for the quotations cited in the Appellants' brief. See Ind. Rule of Appellate Procedure 46(A)(8)(a) (2006) ("The argument must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22.")