# FOR PUBLICATION



FILED
Oct 22 2014, 9:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**NEAL F. EGGESON, JR.**
Eggeson Appellate Services
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**JENNA C. LOWER**
Law Offices of the Liberty Mutual Group
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARGARET DAWSON, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1403-CT-208 |
| | ) | |
| THORNTON'S, INC., | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David A. Shaheed, Judge
Cause No. 49D01-1209-CT-37100

**October 22, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Margaret Dawson appeals from judgment in favor of Thornton's, Inc., following a jury trial. Dawson raises one issue, which we revise and restate as whether the trial court erred or abused its discretion in not instructing the jury regarding spoliation of evidence. We affirm.

FACTS AND PROCEDURAL HISTORY

In the early afternoon on October 22, 2010, Dawson visited Thornton's in Speedway, Indiana, and walked inside the store and paid for gasoline for her motorcycle. After paying, she walked from the cashier back toward the door to exit and tripped on the corner of a mat located on the floor immediately inside the door. She fell and sustained injuries requiring surgery. At some point at least four weeks after her fall, Dawson returned to Thornton's and inspected the mat. She attempted to take a picture of the mat with her cell phone "but it was not a usable picture." Transcript at 72. In March 2012, Thornton's replaced the mat.

On September 20, 2012, Dawson filed a complaint for damages alleging that Thornton's was negligent for its failure to maintain a safe and clear passage for customers entering and exiting the store and that she suffered significant injury to her shoulder and right arm. During the jury trial, Thornton's moved to admit a photograph of the mat which had been taken by the store manager immediately after Dawson's fall. Dawson's counsel objected and argued that Thornton's was using a photograph to show the condition of something when she had not been allowed to inspect the original. The court ordered a brief recess so that the parties could present their arguments outside the presence of the jury related to the admission of the photograph and the issue of spoliation.

2

Dawson's counsel argued that the best evidence was the original mat, that Dawson disputed "the condition that [Thornton's was] trying to allege that the mat was in," and that Dawson should have been allowed to inspect and have an expert look at the mat. Id. at 134. Dawson's counsel further argued: "They destroyed the mat, they got rid of it, and then they want to bring in a photograph to prove the condition of the mat, and all the while they're arguing to the Jury that [] Dawson can't prove what was wrong with the mat." Id. at 134-135. Counsel for Thornton's argued that Dawson had an opportunity to and did inspect the mat and that she took photographs of it weeks after she fell. Counsel for Thornton's further argued that the mat was replaced in 2012 and that "[i]t was more than a year [and] a half . . . period of time that [Dawson] could have requested the mat, inspected the mat." Id. at 135. Counsel for Thornton's also maintained that Dawson's "prior counsel sent a letter to Thornton['s] requesting the [store's] video, but never mentioned the mat. No request for the mat was never [sic] made." Id.

Dawson's counsel responded that spoliation "comes into play if [Thornton's] knew that a piece of evidence was going to be at issue," that "[l]itigation doesn't necessarily have to be pending," and that, "quite frankly, the fact that [Thornton's] took a photo of the corner of the mat is all the evidence you need that they knew that the condition of the corner of the mat was going to be at issue that day." Id. at 136-137. The court noted that "this also impacts the final instructions, because [Dawson was] seeking spoliation," and Dawson's counsel noted its proposed instruction regarding spoliation of evidence. Id. at 137. Counsel for Thornton's stated that the photograph was taken as part of the investigation by Thornton's at the time, that it was normal procedure, that the fact

3

it was taken did not mean it anticipated litigation at that time, and that Dawson had plenty of time and opportunity to request and inspect the mat before it was replaced.

The court noted that Dawson's proposed instruction stated: "If a party fails to produce evidence under the party's exclusive control, you may conclude that the evidence would have been unfavorable to the party's case." Appellant's Appendix at 166. The court then stated that "to specifically [] be able to invoke the spoliation rule, there has to be some specific notice to preserve, and that from my understanding has not been done," that nevertheless "it is prejudicial in the Court's view for [Thornton's] to introduce the photograph while this issue of spoliation is in the air," that if Thornton's wanted to use the photograph the court would give Dawson's proposed jury instruction, and that if Thornton's did not use the photograph Dawson would not be entitled to her proposed instruction. Id. at 139-140. Thornton's then agreed to withdraw its request to admit the photograph. Later when reviewing final jury instructions, the court noted it had refused Dawson's proposed instruction regarding spoliation of evidence. The jury found Thornton's was not at fault, and the court later entered judgment in favor of Thornton's.

## DISCUSSION

The issue on appeal is whether the trial court erred or abused its discretion in not instructing the jury regarding spoliation of evidence. The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair and correct verdict. Blocher v. DeBartolo Props. Mgmt, Inc., 760 N.E.2d 229, 235 (Ind. Ct. App. 2001), trans. denied. In reviewing a trial court's decision to give or refuse a tendered

4

instruction, it must be determined whether the instruction: (1) correctly states the law; (2) is supported by the evidence in the record; and (3) is covered in substance by other instructions. Wal-Mart Stores, Inc. v. Wright, 774 N.E.2d 891, 893 (Ind. 2002), reh'g denied. If the challenge to a jury instruction is that it does not correctly state the law, we will review the instruction *de novo*, but if the challenge is that the instruction is not supported by the evidence in the record or that the substance is not covered by other instructions, we will reverse only if the trial court has abused its discretion. Id. at 893-894.

To find an abuse of discretion, it must be determined that the instructions as a whole misstate the law or otherwise mislead the jury. Smock Materials Handling Co. v. Kerr, 719 N.E.2d 396, 402 (Ind. Ct. App. 1999). Errors with regard to instructions are harmless and do not require reversal where the verdict would have been no different had the jury been properly instructed. Id. In addition, we will not reverse a court's decision not to give a proposed instruction unless the substantial rights of the proposing party would be prejudiced by the failure to give the instruction. See Dollar Inn, Inc. v. Slone, 695 N.E.2d 185, 190 (Ind. Ct. App. 1998) (citing Captain & Co. v. Stenberg, 505 N.E.2d 88, 97 (Ind. Ct. App. 1987), trans. denied, trans. denied), reh'g denied, trans. denied.

Dawson contends that, by refusing to instruct the jury on spoliation of evidence, the trial court "essentially dictated the outcome of the trial" and that, "[a]s the condition of the floor mat was the sole contested issue at trial, the trial court's refusal to allow any argument, discussion, or adverse inference regarding the absence of the floor mat left the jury with no choice but to conclude Thornton's had done nothing wrong." Appellant's

Brief at 7. Dawson argues that her tendered instruction satisfied the three requirements and that the court's failure to give the instruction warrants a new trial. She also argues that the court's error affected her substantial rights, that any question of fact surrounding the issue of spoliation should have been determined by the jury and not the court, and that equity requires this court to recognize an independent cause of action for spoliation of evidence and rule that she may pursue a first-party spoliation claim against Thornton's. Thornton's maintains that Dawson waived her claim by failing to object to the trial court's ruling not to instruct the jury on spoliation of evidence, that there was not sufficient evidence to support a spoliation instruction, and that Dawson cannot establish that her substantial rights were impaired. It also argues Dawson is not entitled to a new cause of action against Thornton's.

In Porter v. Irvin's Interstate Brick & Block Co., this court stated:

> In Indiana, the exclusive possession of facts or evidence by a party, coupled with the suppression of the facts or evidence by that party, may result in an inference that the production of the evidence would be against the interest of the party which suppresses it. While this rule will not be carried to the extent of relieving a party of the burden of proving his case, it may be considered as a circumstance in drawing reasonable inferences from the facts established. The rule not only applies when a party actively endeavors to prevent disclosure of facts, but also when the party merely fails to produce available evidence. These cases are directed to a party which has suppressed evidence believed to be in its control at the time of the law suit; however, we see no reason why they should not be applied where the party spoliates evidence prior to the commencement of a law suit that the party knew or should have known was imminent.

691 N.E.2d 1363, 1364-1365 (Ind. Ct. App. 1998) (citations and internal quotation marks omitted).

6

In Cahoon v. Cummings, the Indiana Supreme Court stated that "[s]poliation of evidence consists of 'the intentional destruction, mutilation, alteration, or concealment of evidence, usually a document. If proved, spoliation may be used to establish that the evidence was unfavorable to the party responsible.'" 734 N.E.2d 535, 545 (Ind. 2000) (quoting BLACK'S LAW DICTIONARY 1409 (7th ed. 1999)). In Gribben v. Wal-Mart Stores, Inc., in addressing a certified question regarding whether Indiana law recognizes a claim for first-party spoliation of evidence, the Court held that, "[n]otwithstanding the important considerations favoring the recognition of an independent tort of spoliation by parties to litigation, we are persuaded that these are minimized by existing remedies and outweighed by the attendant disadvantages," and "[w]e thus determine the common law of Indiana to be that, if an alleged tortfeasor negligently or intentionally destroys or discards evidence that is relevant to a tort action, the plaintiff in the tort action does not have an additional independent cognizable claim against the tortfeasor for spoliation of evidence under Indiana law." 824 N.E.2d 349, 355 (Ind. 2005).

The instruction proposed by Dawson was not supported by the admitted evidence. The record reveals that, at some point at least four weeks after the accident, Dawson returned to Thornton's, inspected the mat, and attempted to take a photograph of the mat using her cell phone, but the photograph was not usable. In addition, while Dawson's previous counsel sent a letter to Thornton's requesting the store's video recording of the incident, no request was made with respect to the mat. Dawson tripped on the mat in Thornton's on October 22, 2010, and, according to the testimony of the manager at Thornton's and an interrogatory answer provided by Thornton's, the mat was replaced in

March 2012, over one year and four months after Dawson's fall.[1]  During this period, Dawson and her counsel had ample opportunity to inspect and document the condition of the mat upon which she tripped, have an expert inspect the mat, or request that the mat be preserved.  Further, Dawson has not made a showing that Thornton's concealed or suppressed any of the facts or evidence regarding the mat from her.

Based upon the record, we cannot say the trial court erred or abused its discretion in not giving Dawson's proposed instruction regarding spoliation of evidence or that the substantial rights of Dawson were prejudiced by the court not giving her proposed instruction.  See Underwood v. Gale Tschuor Co., 799 N.E.2d 1122, 1134 (Ind. Ct. App. 2003) (holding that the trial court did not abuse its discretion by finding that the evidence presented at trial did not support the giving of a spoliation of evidence instruction where the defendant did not paint the counterweight at issue until nine months after the accident), trans. denied.  Additionally, we decline Dawson's request to recognize an independent cause of action for spoliation of evidence.  See Gribben, 824 N.E.2d at 355 (holding that, if an alleged tortfeasor negligently or intentionally destroys or discards evidence that is relevant to a tort action, the plaintiff in the tort action does not have an

---

[1] In an August 2013 answer to interrogatories, counsel for Thornton's stated the mat upon which Dawson tripped "was replaced with a Water Hog mat in 2011." Appellant's Appendix at 125.  In an October 2013 answer to subsequent interrogatories, counsel for Thornton's stated: "The mat which is the subject of the instant suit was replaced with a Water Hog mat in March 2012. [Thornton's] originally stated in 2011, however upon further investigation it found that the correct year was 2012." Id. at 134. Thornton's attached an Order Confirmation dated March 8, 2012, for the purchase of a "WATERHOG MAT." Id. at 139.  The manager at Thornton's testified that a new mat was purchased in March 2012. On cross-examination, the manager was asked if she had a reason to dispute the interrogatory answer that the mat was replaced in 2011, and the manager testified: "No, it could have been replaced twice.  I'm not positive." Transcript at 148.  On redirect, when asked if the mat was ever replaced before March of 2012 and after Dawson's fall, the manager testified "[n]ot that I'm aware of," and she indicated she had been the manager of the store for that entire time. Id. at 151.

additional independent cognizable claim against the tortfeasor for spoliation of evidence under Indiana law).

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

BARNES, J., and BRADFORD, J., concur.